IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 17-CR-30033-MJR |
|  | ) |  |
| MARCUS THORNTON, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### A. Background

This case came before the Court on September 7, 2017, for a hearing on Defendant's Motion to Remove Appointed Counsel (Doc. 39). The underlying criminal matter involves a four-count indictment alleging bank robbery on two occasions. A brief history of the proceedings is helpful to understand the posture of the case.

On February 23, 2017, Defendant Marcus Thornton was indicted on one count of bank robbery, in violation of 18 U.S.C. § 2113(a) (Doc. 12). Prior to the arraignment, Assistant Federal Public Defender Ethan Skaggs entered his appearance on behalf of the Defendant (Doc. 16). The Defendant was arraigned on March 1, 2017. Following the initial arraignment, a superseding indictment added a second count for brandishing a firearm in furtherance of a crime of violence, a violation of 18 U.S.C. § 924(c)(1)(A)(ii)

(Doc. 22). The Defendant was arraigned on the first superseding indictment on March 23, 2017 (Doc. 29). The initial trial setting of April 24, 2017, was continued on Defendant's unopposed Motion (Doc. 31), thus moving the trial to June 26, 2017 (Dkt. txt. 32).

Prior to the June 26, 2017 trial date, Defendant filed *ex parte* correspondence with the Court seeking to terminate his counsel and to exercise his right to a speedy trial (Doc. 33). The Court immediately set the matter for a hearing on June 15, 2017, at which time the Defendant retracted his request to extinguish counsel, or to press for a speedy trial (Dkt. txt. 34). Defense counsel then filed a second unopposed motion to continue the trial, which was granted, thus moving the trial to September 25, 2017 (Docs. 35, 37).

On August 15, 2017, Defendant sent the Court *ex parte* correspondence, again seeking to discharge defense counsel (Doc. 39). The Court scheduled the matter for a hearing on September 1, 2017—which ultimately had to be moved to September 7, 2017, for calendaring purposes (Dkt. txt. 40, 48). In the interim, the Defendant filed multiple motions that were stricken because he was still represented by counsel (*See* Docs. 41, 42, 43).

On August 23, 2017, the Government filed a second superseding indictment adding two additional counts (Doc. 44). The Defendant was arraigned on the second superseding indictment—alleging a second count of bank robbery and a second count

of brandishing a firearm in furtherance of a crime of violence—on September 5, 2017 (Doc. 51).

On September 7, 2017, Defendant Thornton came before the Court for a hearing on his Motion to Remove Defense Counsel (Doc. 39). At the hearing, the Court initially discussed the possibility of providing the Defendant with alternative counsel, before moving to the traditional *Faretta*[1] colloquy. At the conclusion of the colloquy, the Court **FINDS** that Defendant is competent and able to represent himself for the reasons that follow.

### B. Legal Standards

The Sixth Amendment to the United States Constitution guarantees the accused in a criminal case the right to the effective assistance of counsel. ***Strickland v. Washington*, 466 U.S. 668, 684–86, (1984); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009).** This applies to all critical stages of a criminal proceeding, including sentencing. ***Jackson v. Miller*, 260 F.3d 769, 776 (7th Cir. 2001), citing *Gardner v. Florida*, 430 U.S. 349, 358 (1977).** Additionally, the Sixth Amendment provides a defendant "who does not require appointed counsel the right to choose who will represent him." ***United States v. Turner*, 594 F.3d 946, 948 (7th Cir. 2010), citing *Wheat v. United States*, 486 U.S. 153, 159 (1988).** The logical inverse is also true: "the right to counsel of choice *does not* extend to defendants who require counsel to be appointed for

---

[1] ***Faretta v. California*, 422 U.S. 806, 835-36 (1975) (setting forth factors to be assessed when a defendant wishes to represent himself).**

them." *United States v. Wallace,* 753 F.3d 671, 675 (2014), quoting *United States v. Gonzalez–Lopez,* 548 U.S. 140, 151 (2006) (emphasis added).

The right to counsel of choice for a defendant with appointed counsel also does not mean that the defendant has an unlimited ability to request different appointed counsel. *See United States v. Alden,* 527 F.3d 653, 660 (7th Cir. 2008) ("A district court is not required to appoint a new lawyer each time the defendant requests one"); *United States v. Irorere,* 228 F.3d 816, 828 (7th Cir. 2000) ("where the defendant's lack of counsel was caused by his own refusal to cooperate with the counsel appointed for him…the district court's decision not to appoint new counsel for the defendant does not constitute an abuse of discretion.") Faced with a defendant insistent upon self-representation, a district court should make an inquiry to satisfy itself that the defendant is indeed competent to represent himself. *See Faretta,* 422 U.S. at 835-36 (1975); *United States v. Berry,* 565 F.3d 385, 386-87 (7th Cir. 2009) (noting that a court can be caught between a rock and a hard place when a defendant insists upon self-representation, but exhibits characteristics that cast doubt upon his ability to competently do so, and noting that in such a situation a district court acted appropriately by conducting a *Faretta* colloquy).

In order to proceed *pro se*, a defendant must demonstrate a knowing and intelligent waiver of his right to counsel. *See United States v. Clark,* 774 F.3d 1108, 1112

(7th Cir. 2014); *Alden*, 527 F.3d at 660; *Irorere*, 228 F.3d at 828. A valid waiver must also be voluntary and unequivocal. *Clark,* 774 at 1112.

> A judge must investigate as long and as thoroughly as the circumstances of the case before him demand….A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

*Id. quoting Von Moltke v. Gillies*, 332 U.S. 708, 723-24 (1948) (Black, J., plurality opinion). The length and arduous nature of the inquiry can and often will vary based on the severity of the charges and the complexity of the case. *Id.* at 1112-13; *Iowa v. Tovar*, 541 U.S. 77, 92 (2004) ("*Tovar*").

Factors to be considered include: a defendant's education or sophistication, the complex or easily grasped nature of the charge(s), and the stage of the proceeding. *Tovar*, 541 U.S. at 88. A proper colloquy may also include a discussion of the defendant's understanding of the charges and potential penalties, his exposure to prior criminal proceedings, and his understanding of the technical aspects of trial practice. *See U.S. v. Cooper*, 591 F.3d 582, 587 (7th Cir. 2010). Ultimately, the Seventh Circuit has not established a particular script a district court judge must follow when conducting a *Faretta* colloquy, but the general tenor of the cases reviewing the colloquies suggest that a variety of questions may suffice. *See e.g. id.* at 587 (noting that a district judge was not required to discuss with the defendant that he would be shackled or how that would impact his conduct at trial); *Tovar*, 541 U.S. at 88 (noting that ultimately the

**Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel.")** It is a trial judge's duty to determine that a defendant gives a knowing and voluntary waiver with his "eyes wide open," but it is not a burden on the defendant to establish that his choice is knowing and voluntary. *Imani v. Pollard*, **826 F.3d 939, 944 (7th Cir. 2016).**

C. <u>Application</u>

Here, after conducting an extensive colloquy with the Defendant, the Court is convinced that the Defendant is making a knowing and voluntary decision to proceed *pro se* despite the severity of the charges, the potential penalties, and his lack of expertise in the law. The Defendant attended school through the eleventh grade and later secured his GED. He avers that he is able to read, write, and speak the English language, which is evidenced by his eloquent self-representation at the *Faretta* hearing. Though he has never attended a full criminal trial in person, examined witnesses, or otherwise participated in a trial setting, he is familiar with the criminal justice system.

Defendant's familiarity with the criminal system, and his aptitude for making strategic decisions on his own behalf is evidenced in some capacity by his desire to refile his previously stricken motions (Docs. 41 and 42). He also sought to file two more motions that he brought to the *Faretta* hearing, as well as an additional five or more motions in short order. The Court has yet to review the contents of those motions, so it cannot speak to the specific strategic or tactical wisdom of the contents, but the

Defendant's ability to draft those documents and his foresight to bring them along to Court to be filed suggest that he does possess some meaningful capacity to represent himself.  The Court also discussed Defendant's desire to investigate certain aspects of his case.  Defendant's responses and requests for investigative assistance made it clear that he put considerable thought into the upcoming trial.

Aside from motions and discovery, the Court discussed the logistics of a trial, as well as the applicable rules in the code of criminal procedure and the evidence code.  The Defendant expressed that he was not thoroughly versed in those technical rules, but that, nevertheless he wished to proceed on his own.  The Court made Defendant aware that it would not be able to assist him during the trial by, for example, raising an objection Defendant missed.  Defendant indicated that he would like assistance where possible from standby counsel on those aspects of the trial.  The Court informed him that standby counsel would not be acting as his law clerk, and that, for the most part, he would be on his own at trial.  The Court emphasized that the Defendant's autonomy at trial would be in part by design so as not to give the jurors a skewed perspective of whether or not the Defendant was truly self-represented.  In the face of these cautionary notes, Defendant did not relent in his desire to proceed *pro se.*

The Court also repeatedly discussed the potential penalties in the case, including fines in the hundreds of thousands of dollars, as well as a sentence of 32 years to life.

The Court stressed that on his best day, if found guilty, the Defendant would face a 32 year sentence. Defendant indicated that he understood the risk.

After a lengthy colloquy, the Court circled back to a discussion of Defendant's forthcoming pretrial motions and his requests for assistance with investigation and discovery.[2] Throughout this conversation, the Court periodically revisited the issue of self-representation, asking the Defendant to verify that he wanted to proceed *pro se*. At the conclusion of the hearing, the Court indicated that it would await Defendant's filing of motions (which Defendant indicated he could complete by Monday, September 11, 2017). Upon receipt of the motions, the Court will set a response deadline for the Government. Following a ruling on the motions, the Defendant will have the opportunity to elect to proceed to trial *pro se* or to opt for new appointed counsel. Defendant will maintain this option for as long as time permits prior to the commencement of trial.

Based on the foregoing analysis, the Court finds that the Defendant is knowingly and intelligently electing to proceed *pro se*, even though, in the Court's view it is not a wise decision. The Defendant's decision is also voluntary and unequivocal. The Court posed many hypothetical situations and thoroughly explained to the Defendant why it may be risky to proceed on his own. The Defendant visibly contemplated the Court's

---

[2] Some of this conversation occurred outside the presence of the Government to afford the Defendant privacy and to avoid any prejudice.

cautionary notes, and elected to proceed *pro se*. Accordingly, the Court finds it appropriate to **GRANT** the Defendant's Motion to Remove Defense Counsel (Doc. 39).

### V. Conclusion

Defendant's Motion to Remove Defense Counsel is hereby **GRANTED** (Doc. 39). As a result, the Clerk's Office is **DIRECTED** to begin sending any filings or orders directly to the Defendant.

The Federal Public Defender's Office is also **DIRECTED** to designate **STANDBY COUNSEL**. The Clerk's Office is **DIRECTED** to continue electronic service to the Federal Defender's Office so that standby counsel can stay informed in this matter.

Additionally, the Clerk's Office is **DIRECTED** to refile the previously stricken motions—Docs. 41 and 42—*nun pro tunc*.

**IT IS SO ORDERED.**

DATED: **September 8, 2017**

*s/ Michael J. Reagan*
Michael J. Reagan
Chief Judge
United States District Court