# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-CR-30033-MJR |
| ) | |
| MARCUS THORNTON, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### I.  Introduction

This matter came before the Court on November 2, 2017, for a motions hearing. At the hearing, the Court denied some motions on the record (Docs. 41, 42, 55, 56, 70), granted one motion (Doc. 83), and deferred ruling on a single motion (Doc. 59). The Court also deferred ruling on the Government's 404(b) notice (Doc. 68). The Court promised the parties a cursory ruling on the remaining motions, with a full written order to follow. The Defendant was advised that he had until November 13, 2017, to notify the Court if he wished to proceed with the assistance of appointed counsel. What follows is the written order on the pending motion and the 404(b) notice.

### II.  Facts

The allegations in this case are that Defendant Marcus Thornton allegedly robbed Regions Bank in Lebanon, Illinois, in October of 2016, and U.S. Bank in O'Fallon, Illinois, in February 2017. Of relevance to the issues pending after the motions hearing,

Defendant alleged that he was physically present at his residence on February 17, 2017, when law enforcement and FBI agents searched his home without his consent. Specifically, in his filing he alleges that his girlfriend, Tia Moore, was lured away from the home to secure her consent to search, but he remained at the residence and verbally protested the search. He did not offer under oath testimony to support this assertion. The Government rebutted his contentions via live testimony from Daniel Dixon, John Kelly, and William Barlock. FBI agent John Kelly explained the plan to lure Moore away from the home. Agent Kelly recounted his interaction with Moore, noting that she exhibited no particular apprehension about giving her consent to search after having reviewed her rights. The three men testified consistently that they were not aware of Thornton refusing consent for the home to be searched. Following the testimony of the three men, Defendant Thornton agreed to stipulate that numerous other individuals if called to testify would verify that they he did not object to the home being searched in February 2017.

Turning to the 404(b) evidence, the parties, for the most part, relied on their written submissions. The Government averred that, if allowed to introduce evidence of the Defendant's Mississippi bank robbery conviction, it would likely call a bank teller witness from that bank to testify about characteristics of the robbery. Though the Government relied on numerous characteristics of the Mississippi robberies in comparison to the two at issue in this case—such as the time of day, the amount of money demanded, a mask concealing parts of the robber's face, etc.—their primary focus was a signature catchphrase. In the Mississippi robbery, they would have a teller

testify that while alighting from the bank the Defendant said "thanks have a great day." In the U.S. Bank and Regions Bank robberies, tellers would testify that the alleged robber said "thank you have a nice day" while departing the bank.

In support of its position and at the Court's request, the Government supplied documents to demonstrate what witnesses would say to establish a *modus operandi* between Defendant's Mississippi offense and the present allegations. The admission of the *modus operandi* evidence would ultimately go to a theory of common perpetrator identity between the Missouri offense and the present offence. The Government submitted a Meridan Police Department Incident Report detailing an interview with teller Tabitha Maletich, who would say the Defendant said "thanks have a great day" before departing the Mississippi bank. Two incident reports from the O'Fallon Police Department indicate that Jessica Huber and Maegan Carey would testify that the robber said "thank you, have a nice day" before departing the bank. Two Regions Bank robbery description forms, filled out by Beau Austin and Julie Lloyd, indicate that those two reported the robber saying "thank you, have a nice day" and "have a nice day," respectively. One Regions Bank robbery description form by Chelsey Workman indicated that the robber said "have a good day."

In response to the Government's position, Defendant argued both orally and via written pleading that phrases such as "have a good day," "have a nice day," or "have a great day" are common parlance in the American lexicon. Given the ubiquitous use of the phrases in American discourse, Defendant argued that the phrases identified by the Government do not tend to suggest a common signature or *modus operandi* of the

Mississippi bank robbery and the two alleged offenses before the Court. Further, Defendant insisted that admitting evidence of his conduct during his Mississippi bank robbery would be unduly prejudicial and would make the jurors predisposed to concluding that because of his Mississippi prior he was also the perpetrator in the present offenses. In Defendant's written submission, he created a chart describing the similarities and potential differences in the known statements of potential witnesses that were disclosed to him in discovery. The tables are somewhat difficult to follow, but it appears that the Defendant's point in making the tables is to illustrate that the iterations of "thank you, have a nice day" should not be relied upon as credibly establishing a signature move in the two alleged bank robberies.

### III. Legal Analysis—The Search

A warrantless search of a home is considered *per se* unreasonable and a violation of the Fourth Amendment unless an exception applies, such as the consent of a person with authority. ***United States v. Henderson*, 536 F.3d 776 (7th Cir. 2008).** A person with common authority over a residence may provide valid consent for a search. ***Id., citing United States v. Matlock*, 415 U.S. 164, 171 (1974) and *United States v. Fields*, 371 F.3d 910, 914 (7th Cir. 2014) (consent may be obtained from the person whose property is searched, or from someone, such as a spouse, with actual or apparent authority over the premises).**

In *Georgia v. Randolph*, **547 U.S. 103 (2006),** the Supreme Court held that if co-occupants are present and one consents to a search while the other refuses, then the search cannot proceed without a warrant. The Court acknowledged that it was

drawing a fine line, but indicated that it was appropriate because the assertion of one occupant cannot trump another. The Seventh Circuit considered further implications of the *Randolph* holding in *Henderson,* 536 F.3d at 685. Absent exigent circumstances, a warrantless search of a home based on a co-tenant's consent is unreasonable in the face of a present tenant's express objection. Once the objecting tenant leaves, however, social expectations shift, and the tenant assumes the risk that a co-tenant may allow the police to enter even knowing that the tenant would object or continue to object if present. Both presence *and* objection by the tenant are required to render a consent search unreasonable as to him. *Id.*

Here, in the Defendant's written motion, he contended that he was present at his home and that he verbally objected to the search of the residence. Thus, he argued that Tia Moore's consent was not valid as to him. These bald assertions were not supported by testimony. However, at the motion hearing, multiple individuals credibly testified that consent to search the residence was secured from Tia Moore—an individual with common authority over the home—and that Defendant did not verbally object to the search of the home. Though the testimony did not suggest that Defendant's consent was explicitly sought, it was clear that witnesses Dixon, Kelly, and Barlock had no reason to believe the Defendant opposed the search. In light of the evidence presented, the Defendant's stipulation that additional witnesses would not contradict the evidence, and the lack of any evidence to suggest Defendant verbally opposed the search, the Court finds that there was valid consent to search the residence. Thus, Defendant's Motion to Suppress is **DENIED**.

## IV. Legal Analysis—404(b) Evidence

The Seventh Circuit recently abandoned its long-standing four factor test to determine the admissibility of 404(b) character evidence. In *United States v. Gomez*, **763 F.3d 845, 853 (7th Cir. 2014)**, the Court held that Rule 404(b) is clear enough as drafted, without using an independent multi-factor test. "[T]he rule allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *Id.* at 856. The Seventh Circuit reiterated the *Gomez* holding this year, stating that "…to overcome an objection to Rule 404(b) other-act evidence, the 'proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way.'" *United States v. Mabie*, **862 F.3d 624, 632 (7th Cir. 2017)**, *quoting Gomez*, **763 F.3d at 860.**

There are multiple categories of 404(b) evidence, such as: motive, opportunity, intent, preparation, plan knowledge, identity, absence of mistake, and *modus operandi*. *United States v. Robinson*, **161 F.3d 463, 466-67 (7th Cir. 1998).** "Evidence of *modus operandi* is evidence that shows a defendant's distinctive method of operation." *Id.* at 467. "Evidence demonstrating similarities between the manner in which the two armed bank robberies were carried out goes toward proving identity by establishing the perpetrator's *modus operandi. Id. Modus operandi* evidence must bear a strong resemblance to the pattern of the offense charged which must be "sufficiently idiosyncratic to permit an inference of pattern for purposes of truth." *Id.* "If and when the proponent makes [a proper 404(b)] showing, the district court must then 'assess

whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great.'" *Mabie,* **862 F.3d at 633,** *quoting Gomez***, 763 F.3d at 860.**

The *Gomez* Court emphasized that Rule 403 balancing is difficult, but can be made somewhat easier if the non-propensity factual proposition is not contested, or if the use of the 404(b) evidence would have little probative value. *Id.* In either of those scenarios, the Court suggested that exclusion may be appropriate. *Id.* at 857-60. Rule 403 can counsel the exclusion of testimony or evidence if that evidence is duplicative of something the jury already knows. *See e.g. United States v. Hall***, 93 F.3d 1337, 1344 (7th Cir. 1996) (noting that expert testimony may be excluded under Rule 403 if it is duplicative of the jury's knowledge and experience).** If 404(b) evidence or testimony would be duplicative and thus redundant and of minimal probative value, exclusion may be appropriate. *United States v. Smith***, 80 F.3d 1188, 1193 (7th Cir. 1996) (noting that a district court bears broad discretion over the admission of potentially duplicative "flood the courtroom" type bad act evidence that may have the effect of implying a defendant's bad character).**

Here, as is often the case with 404(b) evidence, it is a close call. The Government met the initial burden of demonstrating that it sought to introduce evidence of Defendant's Mississippi bank robbery for non-propensity purposes by identifying numerous characteristics about that robbery that they argued are uniquely similar to characteristics of the present two robberies. The main characteristic—the utterance of some variation of 'thank you, have a nice day'—is unique in the context of a robbery.

Defendant is correct to contend that those words are common in American parlance, but the words are not common during the commission of a serious crime. To the extent the Defendant tries to argue that testimony about the phrases uttered would be inconsistent or unreliable, the Court is not persuaded. The Government has identified multiple eyewitnesses from each of the alleged robberies before the Court who can testify to what they heard. Minor differences in wording or their recollection of what was uttered is not enough to bar admission of the evidence for juror consideration. The Court finds that this terminology and slight iterations of it are sufficiently idiosyncratic to substantiate a theory of *modus operandi*.

Based on the Government's indication that it seeks to introduce evidence of the Mississippi robbery to establish a *modus operandi* via the utterance of a unique phrase, the Court finds that the evidence passes 404(b) muster. However, that is not the end of the inquiry because the Court must also consider if admission of the evidence would cause substantial prejudice under Rule 403. Here, the Court finds that the evidence would be unduly prejudicial because jurors may have a very difficult time viewing the evidence in a vacuum solely for *modus operandi* purposes. A juror could all too easily jump to the conclusion that because the Defendant has an existing conviction for bank robbery, he is also guilty of the current allegations.

Additionally, the evidence is somewhat duplicative because jurors will presumably already have the information that the two alleged offenses share the signature catch-phrase 'thank you, have a nice day,' from eyewitnesses so evidence of an additional utterance may be unnecessary to establish behavior consistent between

the two charged bank robberies.  The redundant nature of certain evidence is not a *per se* reason for excluding it, but here, given the great risk of an improper inference, the Court finds that it is an additional weight on the scale in favor of exclusion.  The probative value of this evidence is substantially outweighed by its risk of unfair prejudice and cannot be offset by a carefully crafted cautionary instruction.

After having reviewed the evidence presented at the evidentiary hearing, as well as the written submissions of the parties, the Court finds it appropriate to exclude the 404(b) evidence of Defendant's prior conviction and the means of commission of that offense.  The risk of prejudice is simply too great.  ***See United States v. Thomas*, 321 F.3d 627, 630 (7th Cir. 2003) (evidence is unfairly prejudicial if it will induce the jury to decide the case on an improper basis rather than on the evidence presented).**  The Government has a plethora of other evidence at its disposal in this case that can be used without such a great risk of prejudice.  Accordingly, the Government will not be allowed to introduce this evidence at trial.

V.  **Conclusion**

The Defendant's Motion to Suppress (Doc. 59) is hereby DENIED.  Likewise, the Government's Notice of Intent to Introduce 404(b) Evidence is DENIED.  The Defendant shall notify the Court by Monday, November 13, 2017, if he wishes to proceed with the assistance of appointed counsel.  If the Court does not hear from the Defendant by that time, it will be assumed that he is proceeding *pro se* and trial will commence on Monday, November 27, 2017.

**IT IS SO ORDERED.**

**DATED: November 6, 2017**

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge